IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02773-MSK-CBS

ALLEN WILLIAMS,

    Plaintiff,

v.

RICKY MERCER, Fremont Correctional Facility medical staff, in his individual capacity;
THE ESTATE OF ROY D. HAVENS, Fremont Correctional Facility medical staff, in his individual capacity, by and through its Personal Representative, LINDA HAVENS;
JODI JOHNSON, Fremont Correctional Facility medical staff, in her individual capacity;
DONNA GUYETT, Fremont Correctional Facility medical staff, in her individual capacity;
TRUDY SICOTTE, Fremont Correctional Facility medical staff, in her individual capacity; and
JOHN DOE DEFENDANTS 1-10, Fremont Correctional Facility employees, in their individual capacities.

    Defendants.

---

## SHC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants Jodi Johnson, Trudy Sicotte, and The Estate of Roy Havens (collectively "SHC Defendants"), by and through counsel, Joseph P. Sanchez, Goodspeed & Merrill, respectfully move for summary judgment on the federal law claims alleged in Plaintiff's Amended Complaint (Doc. 15, filed 01/16/2017), pursuant to Fed. R. Civ. P. 56. In support thereof, the SHC Defendants state as follows:

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.   SHC Defendants are entitled to Summary Judgment on Claims 1, 3, and 5: Deliberate Indifference**

1.   Burden of proof

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e). When the moving party does not bear the ultimate burden of persuasion at trial, the movant merely needs to show that there is a lack of evidence on any essential element of the non-movant's claim. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). The burden then shifts to the non-movant to establish the existence of some evidence on every essential element of the claim. *Id.*

2.   Elements

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The test for deliberate indifference requires the satisfaction of both an objective and subjective component. *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citations omitted). First, the objective component requires that the prisoner "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* Second, the subjective

component is satisfied when a prison official has a culpable mind, meaning that the official "knows of and disregards an excessive risk to inmate health or safety." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Additionally, a delay in medical care may form the basis for an Eighth Amendment claim; however, the delay must, in itself, "reflect deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

3. Elements that cannot be proven by the Plaintiff

Element Two – Eighth Amendment Subjective Component

The subjective component is met if the plaintiff demonstrates a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006)). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, at 1293. This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007).

***Trudy Sicotte***

Plaintiff cannot prove that Trudy Sicotte, a contract Nurse Practitioner with the Colorado Department of Corrections ("CDOC"), knew that Plaintiff faced a substantial risk of harm or that she disregarded that risk. The risk of harm to Plaintiff was neither known nor obvious to Ms. Sicotte.

Prior to May 12, 2015, Plaintiff had past diagnoses of diabetes mellitus, hypertension, coronary artery disease with multiple prior heart attacks and coronary artery bypass grafting, and an implanted cardiac pacemaker that was replaced in 2012. *See* CDOC Consultation Report Form dated

3

{192929}

5/27/2015, attached hereto as *Exhibit 1*. He had a "prior history of smoking 2 packs per day, but quit 2 years ago". *See* St. Thomas More Emergency Department Report, attached hereto as *Exhibit 2*. In early May 2015, he was being prescribed twelve different medications including Gabapentin, 81 mg Aspirin, and Simvastatin. *See* CDOC Ambulatory Health Record dated 5/12/2015, attached hereto as *Exhibit 3*.

On May 12, 2015, Plaintiff walked into the Fremont Correctional Facility ("FCF") medical department with a self-declared emergency. *Id.* He told Ricky Mercer, a CDOC Registered Nurse, that approximately 15 minutes earlier he began experiencing dizziness, and left arm numbness. He also told Mr. Mercer that his cellmate told him that his speech was slurred. *Id.; see also* Ricky Mercer Deposition, attached hereto as *Exhibit 4*, at 78-79. Mr. Mercer documented that Plaintiff walked with a steady gait; he was alert and oriented; his speech was clear and concise; and his facial features and expressions were symmetrical. *Exhibit 3*. Ms. Sicotte was also present when Plaintiff walked into the FCF medical department. *See* Trudy Sicotte Deposition, attached hereto as *Exhibit 5*, at 122.

Mr. Mercer and Ms. Sicotte conducted a neurological evaluation of the Plaintiff and there were no neurological deficits that they could detect. *Exhibit 4* at 80-82; *Exhibit 5* at 128. An EKG was done which was unchanged when compared to Plaintiff's prior EKG. *Exhibit 5* at 129. Plaintiff did have orthostatic vital signs and a finger stick blood sugar level of 65. *Exhibit 3*. He was given crackers and the kitchen was called for his lunch tray. *Id.* Ms. Sicotte gave Mr. Mercer verbal orders to encourage Plaintiff to drink lots of water, and come back to the medical department for reevaluation that evening. *Exhibit 3*; *Exhibit 5* at 151-152.

This was the only interaction Ms. Sicotte had with Plaintiff between May 12, 2015 and May 15, 2015. The only objective findings that Ms. Sicotte could observe at that time were a significantly

low blood sugar level, and orthostatic vital signs. Her conclusion that the Plaintiff's complaints may be attributable to those objective findings was clearly reasonable. There is no evidence that plausibly suggests that Ms. Sicotte consciously disregarded a serious risk to Plaintiff's health during her brief interaction with him, or that Ms. Sicotte acted with the requisite state of mind sufficient to rise to the level of an Eighth Amendment violation.

### *Jodi (Johnson) Rothgeb*

Similarly, Jodi (Johnson) Rothgeb also had only one interaction with the Plaintiff between May 12, 2015 and May 15, 2015. On May 14, 2015, Plaintiff returned to the FCF medical department for reevaluation, after being seen by Mr. Mercer and Roy Havens, a contract Physician's Assistant, the previous night. Mr. Havens had ordered that the Plaintiff was to return in the morning for reevaluation and "possible referral for carotid US and pacer check". *See* CDOC Ambulatory Health Record dated 5/13/2015 - 22:48, attached hereto as *Exhibit 6*. When Plaintiff returned to the FCF medical department on May 14, 2015, he was seen by Ms. Johnson, a contract Registered Nurse. *See* CDOC Ambulatory Health Record dated 5/14/2015, attached hereto as *Exhibit 7*. Plaintiff was brought in by wheelchair and was able to walk from the wheel chair to the stretcher. *Id.* His gait was unsteady with a slight limp on the left side. *Id.* Plaintiff's vital signs were within normal limits, except for a mildly elevated blood pressure of 146/81. *Id.* Ms. Johnson noted that Plaintiff had clear speech, no facial drooping, and "weaker grip strength with his left hand", though "both upper and lower extremities have strong strength and reflexes". *Id.*

At the time of Ms. Johnson's assessment of Plaintiff, she did not believe that he was in distress and having a transient ischemic attack ("TIA") or cardiovascular accident ("CVA") (stroke). *See* Jodi (Johnson) Rothgeb Deposition, attached hereto as *Exhibit 8*, at 156. The only observable symptoms

Plaintiff was experiencing during Ms. Johnson's assessment was numbness, tingling and slight weakness to his left side, which is also symptomatic of diabetic neuropathy. "Everything else was completely intact as far as any of the assessments for stroke symptoms." *Id.* at 155-156. There is no evidence that Ms. Johnson consciously disregarded a serious risk to Plaintiff's health during her brief interaction with him, or that she acted with the requisite state of mind sufficient to rise to the level of an Eighth Amendment violation. Plaintiff was already scheduled to see medical provider Roy Havens that morning. Ms. Johnson performed a reasonable nursing assessment and appropriately referred the Plaintiff to the provider by keeping him in the medical department pending Mr. Havens' arrival in less than an hour.

### *Estate of Roy Havens*

On the morning of May 13, 2015, Plaintiff was seen in a follow up appointment by Roy Havens. *See* CDOC Ambulatory Health Record dated 5/13/2015 – 10:08, attached hereto as *Exhibit 9*. This was the first time Plaintiff was seen by Mr. Havens between May 12, 2015 and May 15, 2915. At that time, Plaintiff reported no symptoms. *Id.* His blood pressure was mildly elevated at 147/85. *Id.* Mr. Havens wrote that the prior days episode "appears to be a TIA", and Mr. Havens ordered that Plaintiff was to be re-checked "in about one week". *Id.*

At approximately 8:00 p.m. on May 13, 2015, first responders were called to cell house 2, where Plaintiff was found sitting on his bed. Plaintiff told medical staff that he "began having stroke symptoms again" earlier that afternoon at about 3:00 p.m. *Exhibit 6.* This was characterized by left arm numbness, his cellmate reporting slurred speech, a brief headache, and "a hard time walking for approximately 30 minutes". He walked to a Stryker cart and was brought to the FCF medical department where he was again examined by Mr. Mercer and Mr. Havens. *Id.* Plaintiff was alert and

his responses were appropriate. *Id.* His speech was clear, and his vital signs were stable. *Id.* Mr. Havens ordered that the Plaintiff be kept in the medical clinic for observation for two hours; during that time, no "neuro deficits" were noted. *Id.* Mr. Havens also ordered that Plaintiff be scheduled for reassessment in the morning with consideration for "possible referral for carotid US and pacer check". *Id.*

As noted above, on May 14, 2015, Plaintiff returned to the FCF medical department for reevaluation, and was evaluated by Ms. Johnson. Mr. Havens apparently arrived within an hour and wrote a progress note stating "inmate has been seen many times for similar symptoms of numbness and weakness of the left arm and slurred speech. He has been confused and his gait is unsteady. His vitals have been stable. This AM he is unable to use his left arm and his hand has no dexterity. I will try to get him to SMC today." *See* CDOC Ambulatory Health Record dated 5/14/2015 – 9:26, attached hereto as *Exhibit 10*. The next note written by Mr. Havens was about two hours later in which he noted that the Plaintiff "is diabetic and is very poorly controlled. I would like to get him evaluated". *See* CDOC Ambulatory Health Record dated 5/14/2015 – 11:25, attached hereto as *Exhibit 11*. An order was entered for an ultrasound to be done at St. Thomas More Hospital, and a Consultation Report Form was generated at that time, which noted that Mr. Havens was "concerned that he (Plaintiff) may have carotid artery lesions". *See* CDOC Consultation Report Form dated 5/14/2015, attached hereto as *Exhibit 12*.

The following day, on May 15, 2015, Plaintiff returned to FCF medical department shortly after 12:00 noon to be reevaluated. *See* CDOC Ambulatory Health Record dated 5/15/2015, attached hereto as *Exhibit 13*. He was seen by Ms. Guyett, a CDOC Registered Nurse, who charted at 12:39 p.m. that the Plaintiff had left facial droop, minimal movement of his arm, dragging his left leg and

foot, and slurring of words. *Id.* She contacted Mr. Havens who gave her a verbal order to transfer the Plaintiff to St. Thomas More Hospital emergency room "for eval for stroke". *Id.*

In *Childress v. Harms*, 449 Fed.Appx. 758, 759 (10th Cir. 2011), the plaintiff was taken to a county jail after police "determined he was so intoxicated that he was a danger to himself." After the plaintiff complained of "dizziness and ringing in his ears." Two nurses evaluated him and agreed that he was intoxicated. *Id.* Several hours later, the plaintiff was reexamined and a nurse attributed his confusion and slurred speech to intoxication. *Id.* Approximately one hour later, the plaintiff was taken to the hospital where it was determined that he had suffered a stroke. *Id.* The plaintiff then filed suit for deliberate indifference. The Tenth Circuit, affirming the district court, held that the plaintiff's treating nurse was not deliberately indifferent. *Id.* at 762. Even though the treating nurse "recognized the possible symptoms of a stroke [including slurred speech, dizziness, limping, and elevated blood pressure] in [the plaintiff], those symptoms were also common to alcohol intoxication." *Id.* at 760-61. Because the nurse believed the plaintiff was suffering from intoxication, rather than from a stroke, he did not "[know] of and disregard an excessive risk to inmate health or safety." *Id.*

In this case, Plaintiff has a long history of past medical diagnoses of diabetes mellitus, hypertension, coronary artery disease with multiple prior heart attacks and coronary artery bypass grafting, and an implanted cardiac pacemaker that was replaced in 2012. Thus, prior to May 15, 2015, the risk of the harm to Plaintiff was neither known nor obvious to Mr. Havens, until he ordered that Plaintiff be transported to the hospital for a stroke evaluation. Nothing indicates that the level of care provided by Mr. Havens was inconsistent with the symptoms Plaintiff presented. Nor is there any evidence of actual knowledge or recklessness by Mr. Havens. "[A]n inadvertent failure to provide

medical care does not rise to a constitutional violation." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotations and citations omitted).

<u>Element Three – Substantial Harm Component</u>

A delay in medical treatment may form the basis for an Eighth Amendment claim; however, the delay must, in itself, "reflect deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). "Substantial harm" requires a showing that the delay resulted in "lifelong handicap, permanent loss, or considerable pain," while "deliberate indifference" is shown by facts indicating the prison officials were aware of facts from which they could infer that the delay in treatment would cause a substantial risk of serious harm and that they did, in fact, draw that inference. *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001). Plaintiff was transferred to St. Thomas More emergency department on May 15, 2015 at 1:54 p.m., where he was seen by Dr. Ryan Christensen. *See* St. Thomas More Emergency Department Report dated 5/15/2015, attached hereto as *Exhibit 2*. Dr. Christensen noted that a CT scan of the head had "no evidence of acute pathology" or "evidence of abnormality currently". *Id.* at p. 3. Plaintiff's initial blood pressure was 177/75, but "blood pressure improved without any intervention". Dr. Christensen noted that the Plaintiff "has persistent weakness in the emergency department with symptoms are intermittent and that *could* represent a TIA". *Id.* (emphasis added). Therefore, there is no evidence that any delay in treatment that can be attributed to either Ms. Sicotte, Ms. Johnson, or Mr. Havens amounted to substantial harm or even if Plaintiff would have received treatment earlier that such treatment would have substantially reduced his injury.

### B. SHC Defendants are entitled to Summary Judgment on Claims 2, 4, and 6: Conspiracy-Deliberate Indifference

#### 1. Burden of proof

Plaintiff "must allege specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *See also Salehpoor v. Shaninpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (requiring plaintiff to allege by direct or circumstantial evidence that defendants had meeting of minds or agreement). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich*, 159 F.3d at 533. In addition to agreement and concerted action, Plaintiff must show that the conspiracy's goal was to deprive him of a right secured by the Constitution. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

#### 2. Elements

To sustain a conspiracy claim, a plaintiff must adequately plead facts showing that: (1) a conspiracy existed, and (2) an actual deprivation of rights occurred. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). A plaintiff must sufficiently plead both elements, for "pleading and proof of one without the other will be insufficient." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990); *Dixon*, 898 F.2d at 1449.

#### 3. Elements that cannot be proven by the Plaintiff

Plaintiff alleges no sufficient, non-conclusory, factual basis with the requisite particularity to establish any conspiracy to violate his constitutional rights by any of the SHC Defendants. None of Plaintiff's efforts to offer allegations respecting a conspiracy among the SHC Defendants can satisfy the obligation to express sufficient specific, concrete, and non-conclusory facts to

demonstrate that any claimed conspiracy actually existed. Conclusory allegations without factual support are inadequate as a matter of law. *Clolow v. Oklahoma*, 700 F.2d 1291, 1303 (10th Cir. 1983). Plaintiff cannot simply state that a conspiracy exists or that certain parties "conspired." *See Anniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998). Plaintiff fails to provide information regarding the - who, what, where, when, and how of the alleged conspiracy. *See, e.g., Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955, 1970 n. 10 (2007) (calling for "the specific time, place, or person involved in the alleged conspiracies"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (requiring plaintiffs to "make clear exactly who is alleged to have done what to whom…"). Further, Plaintiff's Amended Complaint is devoid of adequate allegations concerning any concerted action taken by all of the individual Defendants that could ever demonstrate the existence or furtherance of any conspiracy. Therefore, Plaintiff has not sufficiently alleged that the SHC Defendants conspired to deprive him of his constitutional rights and the SHC Defendants are entitled to summary judgment on Plaintiff's conspiracy claims.

    **C.**    **SHC Defendants are entitled to Qualified Immunity**

        1.    <u>Burden of proof</u>

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). "[A] private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself." *Eagon ex rel. Eagon v. City of Elk City*, 72 F.3d 1480, 1489 (10th Cir. 1996).

2. Elements

To overcome a defendant's qualified immunity, the plaintiff must show: (1) the defendant violated the plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

3. Elements that cannot be proven by the Plaintiff

Element One – Violation of Plaintiff's Federal Constitutional Rights

For the reasons discussed above, Plaintiff has failed to sufficiently allege that Ms. Sicotte, Ms. Johnson, and Mr. Havens violated his federal constitutional or statutory rights.

Element Two – Clearly Established Constitutional Right

Plaintiff fails to establish that any SHC Defendant knowingly violated his clearly established rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Plaintiff must identify existing law which was sufficiently clear to give defendants "fair notice that [their] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2204). Plaintiff fails to sufficiently show that the SHC Defendants "knew or reasonably should have known" that their conduct was illegal. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A right "is clearly established only if there is "a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts has found the law to be as the

plaintiff maintains.'" *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (internal quotations omitted).  Given the Tenth Circuit opinion in *Childress v. Harms*, 449 Fed.Appx. 758, 759 (10th Cir. 2011) and the facts of this case, Plaintiff cannot show that the SHC Defendants violated clearly established law.  Therefore, Ms. Sicotte, Ms. Johnson, and Mr. Havens are entitled to qualified immunity.

## CONCLUSION

In conclusion, for all of the foregoing reasons, Defendants Trudy Sicotte, Jodi Johnson, and the Estate of Roy Havens are entitled to summary judgment, and respectfully request that this Court dismiss all of Plaintiff's federal law claims against them with prejudice, and for all other and further relief as this Court deems just and appropriate.

Respectfully submitted this 5th day of September, 2017.

/s/ Joseph P. Sanchez

Joseph P. Sanchez
Goodspeed & Merrill
7800 E. Union Ave, Suite 600
Denver, CO  80237
Phone:  720.473.7644
Fax:      720.473.7647
jsanchez@goodspeedmerrill.com

*Attorney for Defendants Jodi Johnson, Trudy Sicotte, and Estate of Roy Havens*

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2017, I electronically filed the foregoing **SHC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Adam Frank
Faisal Salahuddin
Frank & Salahuddin, LLC
1741 High Street
Denver, CO 80218
fas@fas-law.com
adam@fas-law.com

*Attorneys for Plaintiff.*

Chris W. Alber
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
chris.alber@coag.gov

*Attorneys for Defendants Mercer, Guyett, Rogers, Snell, Rocchi, Hansen.*

                                      */s/ Joseph P. Sanchez*
                                      for Goodspeed & Merrill