IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02773-MSK-CBS

ALLEN WILLIAMS,

      Plaintiff,

v.

RICKY MERCER, Fremont Correctional Facility medical staff, in his individual capacity;
THE ESTATE OF ROY D. HAVENS, Fremont Correctional Facility medical staff, in his
individual capacity, by and through its Personal Representative, LINDA HAVENS;
JODI JOHNSON, Fremont Correctional Facility medical staff, in her individual capacity;
DONNA GUYETT, Fremont Correctional Facility medical staff, in her individual capacity;
SHERRY ROGERS, Fremont Correctional Facility medical staff, in her individual capacity;
TRUDY SICOTTE, Fremont Correctional Facility medical staff, in her individual capacity;
MICHAEL SNELL, Fremont Correctional Facility correctional officer, in his individual
capacity;
JAY ROCCHI, Fremont Correctional Facility correctional officer, in his individual capacity;
JONATHAN HANSEN, Fremont Correctional Facility correctional officer, in his individual
capacity;
JOHN DOE DEFENDANTS 1-10,

      Defendant.

---

## MOTION FOR SUMMARY JUDGMENT

Come now, Defendants Mercer and Guyett (State Defendants), through the Colorado

Attorney General, who move for summary judgment, pursuant to Fed.R.Civ.P. 56.  In support

thereof, Defendants state as follows:

### NATURE OF THE CASE

Plaintiff is currently incarcerated with the Colorado Department of Corrections (CDOC).

Plaintiff brings this suit pursuant to 42 U.S.C. § 1983 asserting three primary claims against the

Defendants associated with his claims that he received inadequate medical care for alleged mini-

strokes and a full-fledge stroke that occurred between the dates of May 12 and May 15, 2015.

As it relates to Defendants Mercer and Guyett and as a result of the Court's order on the State

Defendants' Partial Motion to Dismiss [Doc. 54], the only remaining claims against Defendants

Mercer and Guyett are Eighth Amendment claims alleging that Plaintiff received inadequate

medical care from each Defendant.[1]

<u>**ARGUMENT**</u>

**CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT**

I.      **Defendants Mercer and Guyett are entitled to summary judgment on
        Plaintiff's Eighth Amendment deliberate indifference claims against them.**

        A.      <u>Burden of Proof</u>:  When a defendant asserts qualified immunity, the

plaintiff bears a heavy two-part burden of proof.  *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th

Cir. 2007).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant

the defendants qualified immunity."  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

        B.      <u>Elements</u>:  The Eighth Amendment's ban on cruel and unusual

punishment is violated if a defendant's "deliberate indifference to serious medical needs of

prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d

1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To establish

a claim for deliberate indifference, a plaintiff must first prove that, objectively, his medical need

is "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A medical need is

sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or

one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).  Second, the

---

[1] Defendants Hansen, Snell, Rocchi, and Rogers have been dismissed from this case.

plaintiff must prove that, subjectively, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A delay in medical treatment may form the basis for an Eighth Amendment claim; however, the delay must, in itself, "reflect deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). "Substantial harm" requires a showing that the delay resulted in "lifelong handicap, permanent loss, or considerable pain," while "deliberate indifference" is shown by facts indicating the prison officials were aware of facts from which they could infer that the delay in treatment would cause a substantial risk of serious harm and that they did, in fact, draw that inference. *Garrett v. Stratman*, 254 F.3d 946, 949–50 (10th Cir. 2001).

C.   Elements not supported by Complaint:

i.   Element One – The Objective Component.

For purposes of this motion only, Defendants Mercer and Guyett do not challenge the objective component here.

ii.   Element Two – The Subjective Component.

Additionally, the evidentiary record reveals that State Defendants did not act deliberately indifferent towards Plaintiff's medical needs. The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quotation omitted). A defendant must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "It is

3

obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Only such indifference that offends "evolving standards of decency" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Negligence does not constitute deliberate indifference and allegations of that sort are insufficient to create a cause of action under § 1983. *Estelle v. Gamble*, 429 U.S. at 104-06; *Daniels v. Williams*, 474 U.S. 327 (1986); *Bryson v. City of Edmond*, 905 F.2d 1386 (10th Cir. 1990). Deliberate indifference is a "stringent standard of fault" which requires more than a showing of "simple or even heightened negligence". *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1285-86 (10th Cir. 1999).

Additionally, "[a] difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). Even a disagreement between experts does not give rise to a claim under § 1983 for deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 962-63 (10th Cir. 1986); *Redding v. Marsh*, 750 F.Supp. 473, 478 (E.D. Okla. 1990). "A prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id*. (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Plaintiff cannot show that either Defendants Mercer or Guyett had the subjective state of mind to meet the subjective component of the deliberate indifference test under the Eighth Amendment.

            a. <u>Rick Mercer</u>.

During all times relevant to this case, in May of 2015, Ricky Mercer was a Registered Nurse working at the Fremont Correctional Facility.  Complaint, Doc. 1, ¶ 12.  Mercer first saw Plaintiff at approximately 1:00 p.m. on the afternoon of May 12, 2015.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 78:13-18; Exhibit A-2, Ambulatory Health Record dated 5/12/2015 at 15:37.  Plaintiff came to the medical clinic with a self-declared emergency complaining that about 15 minutes prior he had some symptoms of dizziness and left arm numbness, and Plaintiff's cellmate had told Plaintiff that he notice that Plaintiff's speech was slurred.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 78:22- 79:2; Exhibit A-2, Ambulatory Health Record dated 5/12/2015 at 15:37.  By the time that Plaintiff saw Mercer approximately 15 minutes after these symptoms started, Mercer first noticed that the symptoms were not currently present.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 79:3-8; Exhibit A-2, Ambulatory Health Record dated 5/12/2015 at 15:37.  Mercer noted, among other things, that Plaintiff's speech was clear and concise, Plaintiff's facial features and expressions were symmetrical, Plaintiff was able to stick out his tongue without deviation, and Plaintiffs grasps were strong and equal.  *Id*.  Mercer did a finger stick blood sugar test and as a result, he gave Plaintiff some crackers and had the kitchen called for a lunch tray.  Exhibit A-2.  Mercer also conducted an EKG.  *Id*.  Mercer then used the Nursing Protocol for dizziness, as dizziness was Plaintiff's chief complaint [Exhibit A-3] and notified nurse practitioner Sicotte of Plaintiff's history and

symptoms.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 97:5-13; Exhibit A-2,

Ambulatory Health Record dated 5/12/2015 at 15:37.  Plaintiff was then advised to drink a lot of

fluids and then to come back to the clinic later that evening and Mercer was then instructed by

Sicotte to check on cardiology consult for a pacemaker check.  Exhibit A-1, Deposition Excerpts

for Ricky Mercer, 91:14-20; 92:9-13; Exhibit A-2, Ambulatory Health Record dated 5/12/2015

at 15:37.  During his examination, Mercer evaluated for neurologically, for a possible stroke, he

evaluated Plaintiff for hypoglycemia, Mercer evaluated Plaintiff for orthostatic hypotension,

Mercer evaluated Plaintiff for his heart, conducted an EKG [which was normal for someone with

a pacemaker], and evaluated Plaintiff for arrhythmias or anything else that might be unusual for

him.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 79:20 – 87:7; 84:17-25; Exhibit A-2,

Ambulatory Health Record dated 5/12/2015 at 15:37.  The decision was to have Plaintiff come

back to the clinic later that evening if Plaintiff would have been having those same symptoms

then, then maybe he would have been sent to the hospital, however, at that time, were too vague

to specifically say that he should have been sent out to the hospital.  Exhibit A-1, Deposition

Excerpts for Ricky Mercer, 100:17 – 101:3.

Plaintiff was next seen by Mercer later in the evening on May 12, 2015.  Exhibit A-1,

Deposition Excerpts for Ricky Mercer, 105:15 – 106:20; Exhibit A-$, Ambulatory Health

Record dated 5/12/2015 at 21:44.  During this re-evaluation, Plaintiff reported that he was still

feeling dizzy, but his speech had been clear and that he did not experience any more numbness in

his left arm.  *Id*.  Mercer did a brief neurological examination and noted that Plaintiff did not

appear to be in any type of physical distress and that Plaintiff was alert and oriented.  Exhibit A-

1, Deposition Excerpts for Ricky Mercer, 106:25 – 109:1; Exhibit A-4, Ambulatory Health

Record dated 5/12/2015 at 21:44.  Plaintiff was instructed to continuing to drink plenty of fluids

and to report new or worse symptoms to the medical clinic.  Exhibit A-4, Ambulatory Health

Record dated 5/12/2015 at 21:44.

The next time that Plaintiff was seen by Mercer was at approximately 3:00 p.m. on the

afternoon of May 13, 2015.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 121:3-5;

Exhibit A-5, Ambulatory Health Record dated 5/13/2015 at 22:48.  Mercer responded to a call

that there was a "man down".  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 119:8-14.

Mercer responded and encountered Plaintiff sitting on his bed.  *Id*.; Exhibit A-5, Ambulatory

Health Record dated 5/13/2015 at 22:48.  Mercer indicated that when he arrived, Plaintiff's

cellmate had told him that he [the cellmate] had witnessed Plaintiff having similar symptoms as

the day before, that Plaintiff had an unsteady gait, that Plaintiff's speech was slurred and Plaintiff

told Mercer that Plaintiff felt dizzy and had had numbness in his arm.  Exhibit A-1, Deposition

Excerpts for Ricky Mercer, 120:9-16; Exhibit A-5, Ambulatory Health Record dated 5/13/2015

at 22:48.  Mercer assessed Plaintiff for any life-threatening injuries in Plaintiff's cell by talking

to Plaintiff, taking his pulse, looking at how Plaintiff was breathing, and then took Plaintiff back

to the medical clinic.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 122:17-23.  During

this initial examination, Plaintiff's speech was clear, Plaintiff was moving all of his extremities,

Plaintiff was breathing normal, Plaintiff's color was okay and Plaintiff's pulse was regular.

Exhibit A-1, Deposition Excerpts for Ricky Mercer, 122:17 – 123:10.  Upon the arrival to the

medical clinic, Plaintiff did not have any neurological deficits and his vital signs were stable.

Exhibit A-5, Ambulatory Health Record dated 5/13/2015 at 22:48.  Mercer then provided a

report to Physicians Assistant Roy Havens and told him the things that he [Mercer] had

7

observed, things symptoms Plaintiff was expressing, the tests that were conducted the day

before, and what Sicotte had ordered.  Exhibit A-1, Deposition Excerpts for Ricky Mercer,

138:22 – 139:8.  Plaintiff was then seen by Physicians Assistant Roy Havens who examined

Plaintiff at the bedside.  *Id*.  Plaintiff was kept in the clinic for two hours for observation.

Exhibit A-5, Ambulatory Health Record dated 5/13/2015 at 22:48.  During that time, Mercer did

not observe any objective symptoms and Plaintiff had said that his subjective symptoms had

subsided.  Exhibit A-1, Deposition Excerpts for Ricky Mercer, 146:18 – 147:4.  The Plaintiff

was to return to the clinic the following morning for a re-evaluation and further testing.  Exhibit

A-1, Deposition Excerpts for Ricky Mercer, 147:13 – 150:11; Exhibit A-5, Ambulatory Health

Record dated 5/13/2015 at 22:48.  Havens had referred Plaintiff for a pacemaker check and a

carotid ultrasound that would look for stenosis in the carotid arteries.  *Id*.  Said another way, the

test would look for fatty and plaque buildup of the wall or a narrowing of the vessel that supplies

blood to the brain.  *Id*.  Plaintiff was instructed to report new or worsen symptoms to medical.

*Id*.

b.  Donna Guyett.

During all times relevant to this case, in May of 2015, Donna Guyett was a Registered

Nurse working at the Fremont Correctional Facility.  Exhibit A-6, Deposition Excerpts for

Donna Guyett, 73:10-15.  Between the dates of May 12 and May 15, 2015, Guyett had contact

with either Plaintiff's medical records or was the nurse to assess and treat Plaintiff on two

occasions.  The only time that Plaintiff was seen and treated by Guyett was on May 15, 2015

when Plaintiff was seen for revaluation of left sided weakness.  *See* Exhibit A-7, Ambulatory

Health Record dated 5/15/2015.

8

The day before, on May 14, 2015, Guyett created an entry in Plaintiff's medical records at approximately 2:22 p.m. *See* Exhibit A-8, Ambulatory Health Record dated 5/14/2015.  On this day, Guyett did not see Plaintiff, did not evaluate Plaintiff, and she was not involved with or in charge of Plaintiff's care.  Exhibit A-6, Deposition Excerpts for Donna Guyett, 148:19 – 149:8.  On the afternoon of May 14, 2015, Guyett noted that Plaintiff had been at the medical clinic earlier that day in the morning with complaints of stroke symptoms.  *See* Exhibit A-8, Ambulatory Health Record dated 5/14/2015.  She noted that Plaintiff was seen by another nurse. *Id*.  During that afternoon, Guyett received a verbal order from PA Roy Havens to document that Plaintiff was ordered a wheelchair.  *Id*.  Guyett documented this and contacted cellhouse staff. *Id*.  *See also* Exhibit A-6, Deposition Excerpts for Donna Guyett, 155:18-20.  In writing this note, Guyett looked at the previous note written by Havens at approximately 11:25 a.m. to see why an order for a wheelchair had been given.  *See* Exhibit A-9, Ambulatory Health Record dated 5/14/2015 at 11:25 a.m.; *see also* Exhibit A-6, Deposition Excerpts for Donna Guyett, 153:9-23.  At that time, Guyett knew that Plaintiff had been seen by a nurse and a provider, Havens, but because he did not see Plaintiff, did not evaluate or assess the Plaintiff, she could not ascertain what else needed to be done.  *See* Exhibit A-8, Ambulatory Health Record dated 5/14/2015; *see also* Exhibit A-6, Deposition Excerpts for Donna Guyett, 154:22 – 155:7.  There is no evidence in the evidentiary record that at the time Guyett wrote her note on the afternoon of May 14, 2015, she knew that Plaintiff was still experiencing the symptoms that brought him to the clinic during the morning of May 14.  Guyett was told that Plaintiff was given a wheelchair and she was asked to document that fact.  Exhibit A-6, Deposition Excerpts for Donna Guyett,

155:18-23.  She did not know the plan for his care or what was to be done for him.  *Id*. at 161:6 –
162:6.

Guyett did see and examined Plaintiff around 12:30 p.m. on May 15, 2015.  *See* Exhibit
A-7, Ambulatory Health Record dated 5/15/2015. Plaintiff was seen for evaluation of left sided
weakness.  *Id*.  During her examination of Plaintiff, she noted that he had drooping on the left
side of his face, that he was unable to move the left side of his face.  *Id*.  Guyett noted that
Plaintiff stated that he had been biting the inside of his mouth and noted that he was walking and
dragging his left leg and foot.  *Id*.  After her examination, Guyett quickly document what she was
seeing from Plaintiff and then advised Havens that Plaintiff needed to get to a hospital.  *Id*. *See
also* Exhibit A-6, Deposition Excerpts for Donna Guyett, 171:2 – 175:3.  It was not Guyett's
decision how to send Plaintiff to the hospital, whether by ambulance or by van.  Exhibit A-6,
Deposition Excerpts for Donna Guyett, 176:14-20.  While CDOC policy did authorize a nurse to
call an ambulance for an offender under certain circumstances if it is a life-threatening situation,
when there was a provider on cite, as there was on May 15, 2015, Guyett would notify the
provider, and the provider would make the decision as to whether to send the offender out to the
hospital.  Exhibit A-6, Deposition Excerpts for Donna Guyett, 89:20 – 90:4.

c.   Argument.

The record here demonstrates that Defendants Mercer and Guyett, during their
examination and treatment of Plaintiff, did not act with deliberate indifference, but rather, treated
Plaintiff appropriately given their good faith assessments and the symptoms and complaints that
Plaintiff presented during his encounters with each defendant.  Plaintiff cannot show that the
defendants turned a blind eye towards his serious medical needs.  During the dates of May 12

10

and May 13, Mercer provided good faith assessments and evaluations given the symptoms and complaints that Plaintiff noted to Mercer during his encounters with Mercer on May 12 and May 13. When Mercer first saw Plaintiff on May 12, the symptoms that Plaintiff was complaining of were not present. During his examination, Mercer evaluated for neurologically, for a possible stroke, he evaluated Plaintiff for hypoglycemia, he evaluated Plaintiff for orthostatic hypotension, he evaluated Plaintiff for his heart, conducted an EKG [which was normal for someone with a pacemaker], and evaluated Plaintiff for arrhythmias or anything else that might be unusual for him. There was nothing abnormal in the results of these evaluations. Mercer reported his assessments to Sicotte and Plaintiff was then advised to drink a lot of fluids and then to come back to the clinic later that evening and Mercer was then instructed by Sicotte to check on cardiology consult for a pacemaker check. Mercer saw Plaintiff later that evening and did not present with any of the symptoms that he had experienced earlier in the day except for some dizziness. Mercer did a brief neurological examination and noted that Plaintiff did not appear to be in any type of physical distress and that Plaintiff was alert and oriented. Plaintiff was instructed to continuing to drink plenty of fluids and to report new or worse symptoms to the medical clinic.

On May 13, 2015, Mercer was called to Plaintiff's cell where he assessed Plaintiff for any life-threatening injuries in Plaintiff's cell by talking to Plaintiff, taking his pulse, looking at how Plaintiff was breathing, and then took Plaintiff back to the medical clinic. During this initial examination, Plaintiff's speech was clear, Plaintiff was moving all of his extremities, he was breathing normal, his color was okay and Plaintiff's pulse was regular. Upon the arrival to the medical clinic, Plaintiff did not have any neurological deficits and his vital signs were stable.

11

Mercer then provided a report to Havens and told him the things that he had observed, symptoms Plaintiff was expressing, the tests that were conducted the day before, and what Sicotte had ordered.  Plaintiff was then seen by Havens who examined Plaintiff at the bedside.  Plaintiff was kept in the clinic for two hours for observation, during which Mercer did not observe any objective symptoms and Plaintiff had said that his subjective symptoms had subsided.  The Plaintiff was to return to the clinic the following morning for a re-evaluation and further testing.

The evaluation and treatment of Plaintiff by Mercer can hardly be characterize as being deliberately indifferent.  Plaintiff was not actively experiencing any of the symptoms that Plaintiff was describing at the times when he saw Plaintiff.  To the extent that Plaintiff here simply disagrees with the diagnosis and/or prescribed course of the treatment that he received by Mercer, his complaints do not amount to deliberate indifference.  *Callahan v. Poppell*, 471 F.3d at 1160; *Self v. Crum*, 439 F.3d at 1231 ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").  Even if it could be said here that Mercer's conduct was negligent or that he was mistaken in not insisting to Sicotte and Havens that Plaintiff should have been sent to the hospital, such a claim does not amount to deliberate indifference.  *See Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) ("inadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to deliberate indifference to serious medical needs."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")  Thus, Plaintiff cannot show that Defendant Mercer acted with the requisite state of mind in his treatment of Plaintiff to meet the deliberate indifference standard and he is entitled to summary judgment.

12

Additionally, as to Guyett, Plaintiff cannot demonstrate that she acted with the requisite state of mind to meet the Eighth Amendment deliberate indifference test.  While Guyett documented that Plaintiff was given a wheelchair on May 14, Guyett knew that Plaintiff had been seen by a nurse and a provider, Havens, but because he did not see Plaintiff, did not evaluate or assess the Plaintiff, she could not ascertain what else needed to be done.  There is no evidence in the evidentiary record that at the time, during the afternoon of May 14, Guyett wrote her note on the afternoon of May 14, 2015, she knew that Plaintiff was still experiencing the symptoms that brought him to the clinic during the morning of May 14.  Guyett was told that Plaintiff was given a wheelchair and she was asked to document that fact.  To the extent that, given her review of the prior noted written by Havens written approximately three hours earlier, Plaintiff maintains that Guyett should have been more proactive determining what the plan of care was for Plaintiff, such actions amount to negligence, at most, which, as noted above, is not sufficient to prove a claim under the Eighth Amendment.  *See Fitzgerald*, 403 F.3d at 1143; *Hood*, 180 F. App'x at 25.

And then on May 15, when Plaintiff was seen by Guyett exhibiting symptoms of a stroke, Guyett reported the symptoms to Havens and Plaintiff was sent to the hospital.  She was not the individual who decided how Plaintiff should transported to the hospital, however to the extent that Plaintiff claims that she should have ensured that Plaintiff was sent to the hospital via ambulance, such a claim would still not amount to deliberate indifference.  *Id.*  She did not turn a blind eye to Plaintiff's serious medical conditions.  She recognized his symptoms for what they were and ensured that he was sent to the hospital.  Such conduct does not amount to deliberate indifference under the Eighth Amendment and she is entitled to the entry of summary judgment.

iii.    <u>Element Three – Substantial Harm</u>.

Plaintiff here additionally can't show that he suffered substantial harm in any delay in his treatment.  Plaintiff received the necessary x-rays in a timely fashion.  Once those x-ray results came in showing the fractures, Plaintiff was immediately provided with a post-op boot and an orthopedic consultation was immediately put in.  Plaintiff received appropriate and timely treatment and care and as a result, the fracture(s) in his foot healed properly.  Thus, Plaintiff's claim fails.

**II.    Defendants are entitled to qualified immunity.**

A.    <u>Burden of proof</u>: When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof.  *Cortez*, 478 F.3d at 1114.  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity."  *Gross v. Pirtle*, 245 F.3d at 1156.

B.    <u>Elements</u>: To overcome a defendant's qualified immunity, the plaintiff must show: (1) the defendant violated the plaintiff's federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant.  *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

C.    <u>Elements not supported by the evidence or law</u>:

<u>Element 1</u>:  For the reasons discussed above, Plaintiff has failed to sufficiently demonstrate that Defendants violated his federal constitutional or statutory rights.

<u>Element 2</u>:  Qualified immunity protects public officials who are required to exercise their discretion, shielding them from personal liability for civil damages.  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Qualified immunity applies in "all but the most exceptional cases,"

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A right "is clearly established only if there is 'a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains'" making the constitutional violation apparent. *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (internal quotations omitted); *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) *citing Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011). This precedent cannot define the right at a high level of generality. *See Apodaca*, 864 F.3d at 1076 (*citing Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, the precedent must be particularized to the facts. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). A precedent is often particularized when it involves materially similar facts. *See Apodaca*, 864 F.3d at 1076 , (*citing White*, 137 S.Ct. at 552). But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct "'obvious[ly]'" violates the law. *See id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)). Thus, a right is clearly established when a precedent involves "*materially similar conduct*" or applies "with *obvious clarity*" to the conduct at issue. *Id.* (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964–65 (10th Cir. 2016) (emphasis in *Estate of Reat*).

By requiring precedents involving materially similar conduct or obvious applicability, courts allow personal liability for public officials only when precedent puts the constitutional violation "beyond debate". *See id.* (*quoting White*, 137 S.Ct at 551). Thus, qualified immunity

protects all officials except those who are "plainly incompetent or those who knowingly violate the law." *Id*.  In light of this precedent and as applied to the evidentiary record in this matter, Plaintiff cannot show that Defendants Mercer or Guyett were so plainly incompetent or that they knowingly violated the law.  Plaintiff can point to no authority that that involves materially similar conduct or applies with obvious clarity to the conduct of Mercer and Guyett that would meet the clearly established prong of the qualified immunity test.  As set forth above, during the dates of May 12 and May 13, Mercer provided good faith assessments and evaluations given the symptoms and complaints that Plaintiff noted to Mercer during his encounters with Mercer on May 12 and May 13.  Mercer defendants turned a blind eye towards Plaintiff's serious medical needs.  Mercer saw Plaintiff, evaluated his medical conditions, conducted neurological testing to evaluate the past symptoms that Plaintiff had reported, and provided treatment to Plaintiff as ordered by Sicotte and Havens.  Plaintiff cannot show and cannot present any authority that presents facts materially similar to Mercer's conduct that would put Mercer on notice that he was violating Plaintiff's Eighth Amendment rights.

Similarly, Plaintiff cannot show and cannot present any authority that presents facts materially similar to Guyett's conduct that would put Guyett on notice that she was violating Plaintiff's Eighth Amendment rights.  While Guyett documented that Plaintiff was given a wheelchair on May 14, Guyett knew that Plaintiff had been seen by a nurse and a provider, Havens, but because he did not see Plaintiff, did not evaluate or assess the Plaintiff, she could not ascertain what else needed to be done.  There is no evidence in the evidentiary record that at the time, during the afternoon of May 14, Guyett wrote her note on the afternoon of May 14, 2015, she knew that Plaintiff was still experiencing the symptoms that brought him to the clinic during

the morning of May 14.  Guyett was told that Plaintiff was given a wheelchair and she was asked to document that fact.  Additionally, on May 15, Plaintiff presented to Guyett exhibiting symptoms of a stroke, Guyett reported the symptoms to Havens and Plaintiff was sent to the hospital.  She was not the individual who decided how Plaintiff should transported to the hospital and Plaintiff cannot present authority that would impose liability for an Eighth Amendment violation against someone who conducted themselves as Guyett did to make the violation clearly established.

Thus, while Defendants Mercer and Guyett contend that their conduct did not amount to an Eighth Amendment violation, even if it did, their conduct did not violate clearly established law.  Therefore, Defendants Mercer and Guyett are entitled to qualified immunity.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants Mercer and Guyett are entitled to summary judgment in their favor on Plaintiff's remaining claims against them.Y bnnhg

Respectfully submitted this 5th day of September, 2017.

CYNTHIA H. COFFMAN
Attorney General

*s/ Chris W. Alber*
CHRIS W. ALBER
Senior Assistant Attorney General
Corrections and Public Safety Unit
Civil Litigation & Employment Law Section
*Attorney for Defendants Mercer and Guyett*

1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6612
Facsimile:  720-508-6032
Email: chris.alber@coag.gov

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2017, I electronically filed the foregoing

Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following email address:

Adam Frank
Faisal Salahuddin
Frank & Salahuddin LLC
1741 High Street
Denver CO 80218
adam@fas-law.com
fas@fas-law.com

*Counsel for Plaintiff*

Joseph Sanchez
Goodspeed & Merrill
7000 East Belleview Ave., Suite 355
Greenwood Village, CO 80111
jsanchez@goodspeedmerrill.com

*Counsel for Defendants Sicotte and Johnson and
the Estate of Roy Havens*

s/ *Chris W. Alber*

18